UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHESAPEAKE OPERATING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-301 |
| | § | |
| WILBUR DELMAS WHITEHEAD; dba | § | |
| WHITEHEAD PRODUCTION EQUIPMENT, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Pending before the Court is Defendant Cash Flow's Motion to Dismiss the Amended Complaint or Stay Proceedings Based on Abstention Doctrines.  (D.E. 22.)[1]  For the reasons stated herein, said motion is DENIED.

**I.     Jurisdiction**

The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because Plaintiff is an Oklahoma corporation, and Defendants are citizens and residents of Texas. (D.E. 8, p. 1-2.)  The amount in controversy is over $75,000.

**II.     Background**

**A.     Factual Background**

Plaintiff Chesapeake is in the business of exploring for oil and natural gas.  On April 15, 2008, Defendant Whitehead assigned some of its contractual rights to Defendant Cash Flow, Whitehead's factoring company, including the right to be paid on the invoices discussed below, issued by Whitehead to Plaintiff.

---

[1] Plaintiff has also filed a Motion to Dismiss Defendant Cash Flow's Counterclaims.  (D.E. 26.)  However, because the response to the Motion to Dismiss Cash Flow's Counterclaims is not yet due, the Court does not address Plaintiff's Motion to Dismiss in this Order.

According to the Operative Complaint, in 2008, Chesapeake contracted to buy from Defendant Whitehead 27 skid-mounted 48'' O.D. separation units known as "Fat-Boy" separators.   From January 2009 to November 2009, Plaintiff received 27 invoices from Whitehead and paid on 23 of the invoices, totaling $855,175.   Plaintiff has not paid the remaining 4 invoices, totaling $148,434.  (D.E. 10, p. 2.)

The checks were made payable to "Whitehead Production Equipment" and mailed to an address used by Defendant Cash Flow (assignee of the contract).   The checks contained the language "No Third Party Endorsements."   At least one check was endorsed by Cash Flow and deposited into a bank account held by Cash Flow.  (D.E. 10, p. 4.)

In December of 2009, Plaintiff also received 4 invoices from Defendant Cash Flow (assignee of the contract), totaling $147,050.  Plaintiff did not pay these invoices.  (D.E. 10, p. 4-5.)  Cash Flow has demanded and continues to demand payment of these invoices. (D.E. 26.)

In early 2010, Plaintiff Chesapeake discovered that Defendant Whitehead had not delivered the "Fat Boy" separators or any other products or services represented in the invoices. When contacted by Plaintiff, Whitehead was unable to produce log books or other documents confirming that Whitehead delivered the Fat Boy separators. (D.E. 10, p. 5.)

Plaintiff further contends that it did not approve or sign many of the invoices paid, and that Defendant Whitehead knowingly forged Plaintiff's employee's signatures on the invoices. Each of the invoices was signed in the name of Kyle Willey, purportedly on behalf of Chesapeake, including invoices dated after April 9, 2009.  However, on April 9, 2009, Willey's employment with Chesapeake had ended.   Willey has reviewed several of the invoices and indicates that the signatures are not his.  (D.E. 10, p. 5.)

According to these allegations, Plaintiff paid $855,175 on the invoices even though the products it ordered were allegedly never delivered.   As a result, Plaintiff contends that Defendant Whitehead and/or Defendant Cash Flow hold money that belongs to Plaintiff and that one or both of these entities is liable for various violations of Texas law.

**B.      Procedural History**

Plaintiff filed its original Complaint against Defendant Whitehead with this Court on September 15, 2010.  (D.E. 1.)   Plaintiff brought the following causes of action: (1) Fraud (against Whitehead only); (2) Breach of Contract; (3) Money Had and Received; and (4) Declaratory Judgment Unpaid Invoices Not Owed.  Plaintiff seeks recovery of the $855,175 paid to Whitehead and/or Cash Flow and a declaratory judgment it has no obligation to pay the 8 unpaid invoices totaling $295,484, and attorneys' fees.  Plaintiff also seeks exemplary damages against Whitehead because Whitehead's acts allegedly constituted fraud, malice or other tortuous acts. (D.E. 10, p. 8-9.)

On September 28, 2010, Defendant Cash Flow filed a cause of action in state court as to Defendants W.D. Whitehead, Whitehead Production Equipment, and Chesapeake Operating, Inc., for payment of past due invoices in the amount of $295,484.00.  (D.E. 22, p. 4.)  Cash Flow's Original Petition brings various Texas state law causes of action, including breach of contract, fraud, conversion, and negligence.  (D.E. 22, Ex. 1, p. 5.)

On November 4, 2010, Plaintiff Chesapeake amended its federal court Complaint, adding claims against Defendant Cash Flow.  (D.E. 10.)  Cash Flow was served on November 18, 2010.

On November 8, 2010, Plaintiff filed in state court a motion to stay the state court proceeding, pending the outcome of this federal suit.  (D.E. 22, Ex. 2.)

On December 6, 2010, Defendant Cash Flow filed the presently pending Motion to Dismiss the Amended Complaint or Stay Proceedings Based on Abstention Doctrines.  (D.E. 22.)

On the same day, Cash Flow filed its answer to Chesapeake's federal court Complaint and brought various counterclaims against Plaintiff Chesapeake and various cross-claims against Defendant Whitehead, claiming it is the assignee of the factoring agreement and is entitled to $295,484 in outstanding Whitehead invoices.  (D.E. 23.)  As to Plaintiff Chesapeake, Cash Flow seeks a declaratory judgment and brings a claim for breach of contract and various agency liability theories as to Mr. Willey, and seeks attorneys fees.  As to Defendant Whitehead, Cash Flow seeks a declaratory judgment and brings claims for fraud, illegality, breach of contract, contribution and indemnity, and seeks attorneys fees.  (Id. at 5.)

On December 9, 2010, the state court granted Plaintiff Chesapeake's motion to stay the state court proceedings pending outcome of this federal lawsuit.  (D.E. 25, p. 2.-3, Ex. 1 ("Register of Actions").)

On December 23, 2010, Plaintiff Chesapeake filed a timely response to the Motion to Stay.  (D.E. 25.)

## III.    Discussion

### A.      Abstention Doctrine

Courts in the Fifth Circuit apply one of two tests when reviewing a district court's exercise of its discretion to stay because of an ongoing parallel state proceeding.  New Eng. Ins. Co v. Barnett, 561 F.3d 392, 395 (5th Cir. 2009).  "When a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action, it must apply the standard derived from Brillhart v. Excess Insurance Co. of America[, 316 U.S. 491, 62 S. Ct.

1173, 86 L. Ed. 1620 (1942)].”  Id. (quoting Southwind Aviation, Inc. v. Bergen Aviation, Inc., 23 F.3d 948, 950 (5th Cir. 1994) (per curiam)) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995) (resolving conflict over which standard governed a district court's stay of a declaratory action)).   “The Brillhart standard affords a district court broad discretion in determining whether to hear an action brought pursuant to the Declaratory Judgment Act.”  Id.

“However, when an action involves coercive relief, the district court must apply the abstention standard set forth in  Colorado River Water Conservation District v. United States. Under the Colorado River standard, the district court's discretion to dismiss is ‘narrowly circumscribed’ and is governed by a broader ‘exceptional circumstances’ standard.”  Id. (citing Colorado River, 424 U.S. 800, 817 (1976)).

Under the Colorado River doctrine, there are six factors for determining whether “exceptional circumstances” warranting abstention exist: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.  Brown v. Pac. Life Ins. Co., 462 F.3d 384, 395 (5th Cir. 2006).

“No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.”  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15-16, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). “Only the clearest of justifications will warrant dismissal.” Id. at 16; see also Nationstar Mortg. LLC v. Knox, 351 Fed. Appx. 844, 851 (5th Cir. 2009).

**B.     Analysis**

The issue before the Court is whether to dismiss or stay determination of Plaintiff Chesapeake's federal court lawsuit, filed September 15, 2010, pending the outcome of parallel state court proceedings.

### 1.     The Colorado River Doctrine Applies

Defendant Cash Flow urges the Court to apply the Brillhart standard to its evaluation of whether to abstain, arguing that Chesapeake's federal lawsuit should be treated as a "declaratory judgment action." (D.E. 22, p. 5-6.)    However, the circumstances of this case mandate that the Court apply the Colorado River standard, rather than the Brillhart  standard.    Plaintiff Chesapeake has brought claims for coercive relief along with its claim for a declaratory judgment.   Specifically, Plaintiff has sued Defendant Whitehead for fraud, and Defendants Whitehead and Cash Flow for breach of contract and money had an received.

"[I]t is well settled in this circuit that a declaratory action that also seeks coercive relief is analyzed under the Colorado River standard." Barnett, 561 F.3d at 396 (citing, e.g., Transocean Offshore USA, Inc. v. Catrette, 239 Fed Appx. 9, 14 (5th Cir. 2007) (per curiam) (unpublished) (Fifth Circuit precedent "demands" application of Colorado River when declaratory action seeks monetary damages and claim is not frivolous); see also Diamond Offshore Co. v. A&B Builders, Inc., 302 F.3d 531, 539 (5th Cir. 2002) (holding that inclusion of timely and non-frivolous claim for monetary damages removed a suit "from the realm of a declaratory judgment action" for purposes of the Brillhart standard)).

Accordingly, this Court must apply the standard enunciated in Colorado River.

#### 2.   Parallel Cases

In applying the <u>Colorado River</u> doctrine, the threshold issue is whether the state suit and this federal suit are "parallel."  One court in this district recently explained:

> The Fifth Circuit has noted that "a mincing insistence on precise identity" of parties and issues is not required to find that cases are parallel. <u>RepublicBank Dallas, Nat'l Ass'n v. McIntosh</u>, 828 F.2d 1120, 1121 (5th Cir. 1987); see also <u>Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.</u>, 962 F.2d 698, 700 (7th Cir. 1992); <u>MidTexas Int'l Ctr., Inc. v. Myronowicz</u>, No. 3:05-cv-1957, 2006 U.S. Dist. LEXIS 55387, 2006 WL 2285581, at *2 (N.D. Tex. Aug. 9, 2006). **The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case**. <u>TruServ Corp. v. Flegles, Inc.</u>, 419 F.3d 584, 592 (7th Cir. 2005).

<u>Rimkus Consulting Group, Inc. v. Cammarata</u>, 2007 U.S. Dist. LEXIS 87807, *10-11 (S.D. Tex. Nov. 29, 2007) (J. Rosenthal) (emphasis added).

In this case, the state court proceeding has already been stayed pending outcome of this lawsuit. (D.E. 25, Ex. 1.)  Even if the state court proceeding had not already been stayed, the state court proceeding is not a parallel case under the standards outlined above.  The state court suit involves the same parties as the federal action.  The invoices and underlying contract at issue in the federal action are the same as those at issue in the state court action.  However, there is not a substantial likelihood that the state court litigation will dispose of all claims presented in the federal action.  In the federal court suit, Chesapeake, as plaintiff, asserts the following causes of action against Whitehead and Cash Flow: (1) fraud (against Whitehead only); (2) breach of contract; (3) money had and received; and (4) declaratory judgment unpaid invoices not owed.  In its state court suit, Cash Flow, as plaintiff, brought various claims, including breach of contract, fraud, conversion and negligence, against Defendants Chesapeake and Whitehead. (D.E. 22, Ex. 1, p. 5.)

As explained, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state-court] litigation will dispose of all claims

presented in the federal case." <u>TruServ Corp.</u>, 419 F.3d at 592. "[A]ny doubt regarding the parallel nature of the [state-court] suit should be resolved in favor of exercising jurisdiction." <u>Id</u>. Here, Chesapeake is not a plaintiff, but rather a defendant, in the state court case. The federal suit thus involves claims that are not present in the state court action, i.e., Chesapeake's claims against Whitehead and Cash Flow. Even if the state court litigates all of Cash Flow's claims, there is a chance Chesapeake's claims will not be litigated and disposed of in state court. As such, the suits are not parallel. <u>TruServ Corp.</u>, 419 F.3d at 592; <u>see also</u> <u>Rowley v. Wilson</u>, 200 Fed. Appx. 274, 2006 WL 2233221, at *1 (5th Cir. 2006) (unpublished opinion) (holding that suits were not parallel for <u>Colorado River</u> abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit). For this reason alone, abstention is not warranted. <u>TruServ Corp.</u>, 419 F.3d at 592.

### 3.      Application of the <u>Colorado River</u> Doctrine

For the sake of completeness, the Court also determines whether abstention would be appropriate under the <u>Colorado River</u> factors. As said, there are six factors for determining whether "exceptional circumstances" warranting abstention exist: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. <u>Brown</u>, 462 F.3d at 395. The Court examines each in turn to see whether abstention is warranted.

**(1)        Assumption Over a Res**

This <u>Colorado River</u> factor weighs in favor of federal-court abstention if the state court first exercises jurisdiction over real property.  <u>Colorado River</u>, 424 U.S. at 818 (citing <u>Donovan v. City of Dallas</u>, 377 U.S. 408, 412, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964)).  Neither the state nor federal suits in this case involve a dispute over real property.  Thus, the first factor supports exercising federal jurisdiction.  <u>See</u> <u>Rimkus</u>, 2007 U.S. Dist. LEXIS 87807, * 13-14 (citing <u>Stewart v. Western Heritage Ins. Co.</u>, 438 F.3d 488, 492 (5th Cir. 2006) (rejecting the contention that the absence of a res is a "neutral item, of no weight in the scales," and finding instead that the absence of a res supports the exercise of federal jurisdiction)).

**(2) The Relative Inconvenience of the Forums**

The federal and state court suits are both in south Texas.   This factor is not present.  Its absence weighs against abstention.  <u>Murphy v. Uncle Ben's, Inc.</u>, 168 F.3d 734, 738 (5th Cir. Tex. 1999).

**(3) Avoidance of Piecemeal Litigation**

Cash Flow argues the third factor weighs in favor of abstention because this case would involve piecemeal litigation if allowed to proceed in both forums.  However, parallel litigation of claims involving similar issues and parties is duplicative, not piecemeal.  <u>Murphy</u>, 168 F.3d at 738; <u>St. Paul Ins. Co. v. Trejo</u>, 39 F.3d 585, 590 (5th Cir. 1994).  This has no bearing on abstention.  <u>Evanston Ins. Co. v. Jimco, Inc.</u>, 844 F.2d 1185, 1190 (5th Cir. 1988.); <u>Black Sea Inv., Ltd. v. United Heritage Corp.</u>, 204 F.3d 647, 650-51 (5th Cir. 2000).

**(4) Order in Which Jurisdiction Was Obtained in Each Forum**

The fourth factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." <u>Murphy</u>, 168 F.3d

at 738.  As explained above, the federal lawsuit was filed first.  Moreover, in the federal lawsuit, the Court has already held a pre-trial conference and entered a scheduling order.  By contrast, no discovery has taken place in the state court lawsuit, other than the order granting Chesapeake's motion to stay in deference to the federal court proceeding.   (D.E. 23, Ex. 1 ("Register of Actions").)

### (5) Extent Federal Law Provides Rules of Decision

State law provides the rule of decision for all claims asserted in this case.  However, "[t]he absence of a federal law issue does not counsel in favor of abstention . . . The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances."  Evanston Ins. Co., 844 F.2d at 1193 (quoting Moses H. Cone, 460 U.S. at 26).  This factor does not favor abstention.

### (6) Adequacy of the State Proceedings

The final factor asks whether state court proceedings would adequately protect the rights of the federal court plaintiff, Chesapeake.  This factor "can only be a neutral factor or one that weighs against, not for, abstention.  A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings."  Evanston Ins. Co., 844 F.2d at 1193.  The state courts are competent to determine the parties' claims.  Nonetheless, the sixth factor does not weigh in favor of abstention.  See id.

To summarize, the state and federal suits at issue in this case are not parallel because the federal suit asserts claims that the state-court suit will not resolve.   In addition, on balance, the Colorado River factors do not weigh in favor of abstention.  Accordingly, even if the state court

had not already granted Plaintiff's motion to stay in deference to this Court's prospective holding, this case does not present "exceptional circumstances" that warrant abstention under <u>Colorado River</u>.  Defendant Cash Flow's Motion to Abstain is denied.

## IV.    Conclusion

For the reasons explained above, Defendant Cash Flow's Motion to Dismiss the Amended Complaint or Stay Proceedings Based on Abstention Doctrines (D.E. 22) is DENIED.


SIGNED and ORDERED this 29th day of December, 2010.

Janis Graham Jack
United States District Judge