UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHESAPEAKE OPERATING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-301 |
| | § | |
| WILBUR DELMAS WHITEHEAD; dba | § | |
| WHITEHEAD PRODUCTION EQUIPMENT, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Chesapeake Operating Inc.'s Motion to Dismiss the Counterclaim of Defendant Cash Flow Experts. (D.E. 26.) For the reasons explained herein, said motion is DENIED.

**I.  Jurisdiction**

The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because Plaintiff is an Oklahoma corporation, and Defendants are citizens and residents of Texas. (D.E. 8, p. 1-2.) The amount in controversy is over $75,000.

**II.  Background**

    **A.  Plaintiff's Complaint Against Defendants Whitehead and Cash Flow**

As alleged in the operative complaint, Plaintiff, Chesapeake Operating, Inc. ("Chesapeake"), is in the business of exploring for oil and natural gas. In a factoring agreement, executed around April 15, 2008, Defendant Whitehead Production Equipment ("Whitehead") assigned some of its contractual rights to Defendant Cash Flow Experts, Inc. ("Cash Flow"),

Whitehead's factoring company, including the right to be paid on the invoices discussed below, issued by Whitehead to Chesapeake.[1]

In 2008, Chesapeake contracted to buy from Whitehead 27 skid-mounted 48'' O.D. separation units known as "Fat-Boy" separators. From January 2009 to November 2009, Chesapeake received 27 invoices from Whitehead and paid on 23 of the invoices, totaling $855,175. The checks were made payable to "Whitehead Production Equipment," but mailed to Defendant Cash Flow. At least one check was endorsed by Cash Flow and deposited into a bank account held by Cash Flow. (D.E. 10, p. 4.) Chesapeake did not paid the remaining 4 invoices, totaling $148,434. (D.E. 10, p. 2.)

In December of 2009, Plaintiff also received 4 invoices directly from Cash Flow, totaling $147,050. Plaintiff also did not pay these invoices. (D.E. 10, p. 4-5.)

Chesapeake alleges that it discovered in early 2010 that Whitehead had not delivered the "Fat Boy" separators or any other products or services represented in the invoices. When contacted by Chesapeake, Whitehead was unable to produce log books or other documents confirming that Whitehead delivered the Fat Boy separators. (D.E. 10, p. 5.)

Chesapeake further contends that it did not approve or sign many of the invoices paid, and that Whitehead knowingly forged Chesapeake's employee's signatures on the invoices. Each of the invoices was signed in the name of Kyle Willey, purportedly on behalf of Chesapeake, including invoices dated after April 9, 2009. However, Chesapeake alleges that on April 9, 2009, Willey's employment with Chesapeake had ended. Willey has apparently reviewed several of the invoices and indicates that the signatures are not his. (D.E. 10, p. 5.)

---

[1] "In the factoring process, a business sells its accounts receivables to a finance company [(the "factoring company")] at a discount. Then, as the business collects its receivables, it repays the factor. (In some cases, clients pay the factor directly.)" Staff IT, Inc. v. U.S., 482 F.3d 792, 794 (5th Cir. 2007).

Chesapeake contends that it paid $855,175 on the invoices even though the products it ordered were allegedly never delivered. As a result, Chesapeake contends that Whitehead and/or Cash Flow hold money that belongs to Chesapeake and that one or both of these entities is liable for various violations of Texas law.

In the operative complaint, filed with this Court on November 4, 2010, Chesapeake brought various causes of action against Whitehead and Cash Flow, and sought recovery of the $855,175 paid to Whitehead and/or Cash Flow and a declaratory judgment it has no obligation to pay the remaining 8 unpaid invoices totaling $295,484. (D.E. 10, p. 8-9.)

      **B.**      **Defendant Cash Flow's Counterclaims Against Plaintiff**

On December 6, 2010, Cash Flow filed its answer to Chesapeake's amended complaint and brought various cross-claims against Whitehead and various counterclaims against Chesapeake.

Cash Flow contends that the factoring arrangement between Cash Flow and Whitehead entitled Cash Flow to payments on Chesapeake's invoices. Cash Flow contends that it contacted Chesapeake to verify this factoring arrangement and that Chesapeake accepted and ratified it. (D.E. 23 at 3.) Cash Flow contends that Chesapeake paid invoices to Cash Flow starting in April 2008 and ending November 23, 2009, totaling in excess of $1,000,000. Cash flow cashed these invoices as part of its standard operating procedures. (Id. at 3-4.)

According to Cash Flow, it communicated regularly with several Chesapeake representatives, including Kyle Willey, who would sign off on the invoices showing Chesapeake approved of payment. Usually, it was Willey's signature on the invoices Cash Flow received from Chesapeake. (Id. at 4.)

Some time in October 2009, these payments ceased, leaving eight unpaid invoices totaling $295,484, which Chesapeake refused to pay, contending the signatures were not valid. (Id.) However, according to Cash Flow, Chesapeake never notified Cash Flow that Willey was no longer employed with Chesapeake and lacked authority to sign the invoices. Indeed, Chesapeake allegedly paid twelve invoices totaling $449,454 to Cash Flow with Willey's signature authorizing payment after April 2009 – the date when Willey was allegedly terminated. (Id. at 5.)

Based on these allegations, as to Chesapeake, Cash Flow (1) seeks a declaratory judgment as to the rights of the parties on the two contracts (the factoring agreement contract between Cash Flow and Whitehead and the alleged contract between Whitehead and Chesapeake); (2) brings a claim for breach of contract with damages based on the eight unpaid invoices (in the amount of $295, 484); (3) brings various agency liability theories as to Mr. Willey; and (4) seeks attorneys fees. (D.E. 23 at 5.)

### C. Plaintiff's Motion to Dismiss

Chesapeake has now filed a Motion to Dismiss Cash Flow's counterclaims. (D.E. 26.) Cash Flow has timely responded, attaching various exhibits to the response, including the factoring agreement and unpaid invoices. (D.E. 29.)

## III. Discussion

### A. 12(b)(6) Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, the Intervenors' Intervention Complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." Ashcroft v.

Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

However, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." Id. at 1949-50.

   B.   Analysis

      1.   Breach of Contract Claim

Under Texas law, the elements for a breach of contract cause of action are: (1) that a valid contract existed; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. See Hussong v. Schwan's Sales Enterprises, 896 S.W.2d 320, 326 (Tex. App.--Houston 1995).

In this case, the parties do not appear to dispute that Cash Flow was the assignee of Whitehead's rights under its customer contract with Chesapeake. Rather, Chesapeake concedes that Cash Flow was the assignee of this contract pursuant to the factoring agreement. (D.E. 10 at 2) ("Whitehead assigned some of its contractual rights to Cash Flow, including, but not limited to, the right to be paid on certain invoices issued by Whitehead.") (D.E. 10 at 2.) Once a valid assignment of a contract is made, "the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981); see also FDIC V. McFarland,

243 F.3d 876, 887 n.42 (5th Cir. 2001) ("It is generally true that 'an assignee takes all of the rights of the assignor, no greater and no less[.]") (quoting In re New Haven Projects Ltd. Liability Co. v. City of New Haven, 225 F.3d 283, 290 n.4 (2d Cir. 2000)).

In its Motion to Dismiss, Chesapeake contends that Cash Flow fails to state a claim for breach of contract showing it is entitled to relief. (D.E. 26 at 2.) Chesapeake concedes that it ceased sending invoices to Cash Flow and that eight invoices for $295,484.00 remain unpaid. (D.E. 10 at 4-5.) However, Chesapeake contends Cash Flow has failed to allege that Whitehead actually performed the work for Chesapeake which was the subject of the invoices. (D.E. 26 at 2.) Rather, Chesapeake contends, none of the ordered products were ever delivered by Whitehead. (D.E. 10 at 5.) Accordingly, no money was owed to either Whitehead or Cash Flow. (Id.)

Chesapeake cites cases demonstrating that an assignee's rights to be paid under a contract is dependent upon proving the elements of breach of contract, including performance of the contract by the assignor. (D.E. 26 at 2) (citing Fidelity Sav. & Loan Asso. v. Baldwin, 416 S.W.2d 482, 483 (Tex. Civ. App. Beaumont 1967); Graham v. Henry, 17 Tex. 164, 167-168 (Tex. 1856) ("Of course, the interest or right of the assignee would ultimately depend upon the performance of the precedent conditions by the grantee."))

Although Chesapeake is correct that Cash Flow is required to prove that Whitehead tendered performance under the contract, along with all other elements of a breach of contract claim, Cash Flow's breach of contract claim does not warrant dismissal under Rule 12(b)(6). Cash Flow has alleged sufficient factual matter to support each element of a breach of contract claim. Twombly, 550 U.S. at 570

First, Cash Flow has alleged the existence of a factoring agreement between Whitehead and Cash Flow entitling Cash Flow to payments on certain invoices, (D.E. 23 at 3), and has attached the factoring agreement to its Response to Chesapeake's Motion to Dismiss. (D.E. 29, Ex. A.)[2] The parties do not dispute that Chesapeake was a customer of Whitehead who contracted with Whitehead for delivery of separation units. (D.E. 26 at 1.) Cash Flow alleges that Chesapeake ratified the factoring agreement and that Chesapeake paid some invoices to Cash Flow. (D.E. 23 at 4-5.) If true, these allegations would indicate that Chesapeake owed any invoices due to Whitehead to Cash Flow as assignee. See Holloway-Houston, Inc. v. Gulf Coast Bank & Trust Co., 224 S.W.3d 353, 361 (Tex. App. Houston 1st Dist. 2006); see also Tex. Bus. & Com. Code § 9.406 ("After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.") Thus, according to these allegations, valid contracts entitling Cash Flow to payments from Chesapeake existed.

Second, Cash Flow has alleged sufficient facts to indicate that Whitehead tendered performance to Chesapeake, satisfying the requirement that Cash Flow, as assignee, demonstrate performance by the assignor. Baldwin, 416 S.W.2d at 483. Cash Flow alleges that Chesapeake paid invoices to Cash Flow in excess of one million dollars, suggesting that Whitehead had delivered the products that were the subject of the invoices. Some of the invoices were allegedly signed by Kyle Willey, a representative of Chesapeake, who indicated to Cash Flow that they had been approved by Chesapeake. (D.E. 23 at 4-5.)

---

[2] Because the factoring agreement is "central" to Cash Flow's counterclaims, the Court may consider it in ruling on the motion to dismiss the counterclaims. See Bryant v. Avado Brands, 187 F.3d 1271, 1281 (11th Cir.1999). The Fifth Circuit recognizes the incorporation-by-reference doctrine. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir.2000)( "'Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' "); see also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1327 at 762-63 (2d ed.1990) ("when [a] plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading").

Moreover, the terms of the factoring agreement contained a warranty by Whitehead that "each account offered for sale to Cash Flow Experts, Inc. is an accurate and undisputed settlement of indebtedness by Customer [i.e. Chesapeake] to Seller [i.e. Whitehead] for a specific amount which is due and payable within thirty (30) days or less…Each assignment shall correctly set forth undisputed opened accounts then owing to Seller by Customers for bona fide sales of merchandise and/or services *that have been shipped or provided as stated in the accompanying invoices*." (D.E. 23, Ex. A) (emphasis added).

Although Chesapeake contends in its complaint that the products were never delivered, (D.E. 10 at 5), Cash Flow's allegations and evidence in support lend sufficient weight to Cash Flow's counterclaim that the products were delivered. As such, Cash Flow has sufficiently pled the second element of its breach of contract claim, tender of performance. Hussong, 896 S.W.2d at 326.

Finally, Cash Flow alleges that Chesapeake breached the contract by failing to pay the eight remaining invoices allegedly owed to Cash Flow under the contracts, and that Cash Flow was financially damaged as a result. (D.E. 23 at 4-5.)

In sum, these allegations are sufficient to support Cash Flow's breach of contract counterclaim and survive Chesapeake's motion to dismiss. Twombly, 550 U.S. at 570.

### 2. Agency Liability

Cash Flow has brought a claim for "agency, apparent agency, ostensible agency, and agency by estoppel as to Chesapeake employee, Kyle Willey and/or W.D. Whitehead." (D.E. 23 at 5.) Chesapeake contends that these "are simply not recognized causes of action" and should be dismissed. (D.E. 26 at 3.) However, Cash Flow's agency theories do not warrant dismissal.

Under the doctrine of *respondeat superior*, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. See DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex.1995); see also Restatement (Second) of Agency § 219 (1958).

The Texas Supreme Court has explained that a principal "may act in a manner that makes [the principal] liable for the conduct of one who is not its agent at all or who, although an agent, has acted outside the scope of his or her authority. *Liability may be imposed in this manner under the doctrine of **ostensible agency** in circumstances when the principal's conduct should equitably prevent it from denying the existence of an agency*." Baptist Memorial Hosp. System v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998) (emphasis added). "Many courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably. As a practical matter, there is no distinction among them." Id. at 948, n. 2 (citing various authorities.)

"Under section 267 [of the Restatement (Second) of Agency], the party asserting ostensible agency must demonstrate that (1) the principal, by its conduct, (2) caused him or her to reasonably believe that the putative agent was an employee or agent of the principal, and (3) that he or she justifiably relied on the appearance of agency." Id. (citing Restatement (Second) of Agency § 267 (1958)).

Cash Flow alleges that Kyle Willey was a "duly authorized representative" of Chesapeake. Cash Flow asserts that it regularly communicated with Chesapeake through Willey or other Chesapeake representatives, "who would sign off on the invoices showing that Chesapeake had approved payment of said invoice." (D.E. 23 at 4.) "In the ordinary course of

business, Cash Flow Experts, Inc. would receive an invoice from Whitehead with a signature of the authorized representative from Chesapeake, in most cases 'Kyle Willey.'" (Id.)

Based on these allegations, Cash Flow may potentially be able to prove that Chesapeake, by its conduct, caused Cash Flow to reasonably believe that Willey was an employee or agent of Chesapeake and that Cash flow reasonably relied upon the appearance of an agency relationship. See § 267. Accordingly, Chesapeake may be liable to Cash Flow under an ostensible agency theory based on the actions of its agent. DeWitt, 904 S.W.2d at 654; Baptist, 969 S.W.2d at 947-948.

Cash Flow's claims based on ostensible agency, apparent agency, apparent authority, and agency by estoppel survive the motion to dismiss.

### 3. Declaratory Judgment

Cash Flow's claim for a declaratory judgment of the parties' rights under the factoring agreement and the alleged contract between Chesapeake and Whitehead likewise survives the motion to dismiss. Under the Texas Declaratory Judgment Act, a person interested under a contract may have the court determine any question of construction or validity arising under the contract and may obtain a declaration of their rights. See Tex. Civ. Prac. & Rem. Code §37.004(a). Cash Flow is entitled to have this Court determine any question of construction or validity and to obtain a declaration its rights under the contracts implicated in the complaint and counterclaims.

## IV.     Conclusion

For the reasons explained above, Chesapeake Operating Inc.'s Motion to Dismiss the Counterclaim of Defendant Cash Flow Experts Pursuant to Rule 12(b)(6) (D.E. 26) is hereby DENIED.

SIGNED and ORDERED this 31st day of January, 2011.

_____
Janis Graham Jack
United States District Judge