UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **CHESAPEAKE OPERATING, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| VS. | § | CIVIL ACTION NO. C-10-301 |
| | § | |
| **WILBUR DELMAS WHITEHEAD; dba** | § | |
| **WHITEHEAD PRODUCTION** | § | |
| **EQUIPMENT,** *et al*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Chesapeake Operating, Inc.'s ("Chesapeake's") Motion for Summary Judgment and its supplement (D.E. 37, 41), Defendant Cash Flow Experts, Inc.'s ("Cash Flow's") Response and its supplement, (D.E. 43, 46), and Chesapeake's Reply (D.E. 50). For the reasons stated herein, Chesapeake's Motion for Summary Judgment (D.E. 37) is GRANTED IN PART and DENIED IN PART, as detailed below.

### I. Jurisdiction

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is an Oklahoma corporation, and Defendants are citizens and residents of Texas. The amount in controversy is over $75,000.

### II. Overview

Plaintiff Chesapeake is in the business of exploring for oil and natural gas. For that purpose, it uses skid-mounted 48-inch O.D. separation units known as "Fat-Boy"

separators.  This case arises from invoices generated for purchases of Fat-Boy separators from Defendant Wilbur Delmas Whitehead d/b/a Whitehead Production Equipment ("Whitehead").

After paying a number of the Whitehead invoices, Chesapeake discovered that the invoiced Fat-Boy separators had never been delivered.  After investigating the matter, Chesapeake learned that its payments had been collected by Defendant Cash Flow pursuant to a factoring agreement between Whitehead and Cash Flow.  Plaintiff Chesapeake now seeks judgment against Cash Flow and Whitehead for breach of contract and return of the monies paid and for a declaratory judgment that it is not responsible to pay any additional unpaid invoices.

### III. Facts

#### A. Invoices

In its Motion, Chesapeake admits that, prior to the events at issue, it had been a customer of Whitehead and had previously purchased Fat-Boy separators.  From January 16, 2009 to September 23, 2009, Whitehead issued to Chesapeake twenty-three (23) invoices, each of which was to purchase a separate Fat-Boy separator.  Each of the invoices reflects that it was for property to be delivered to Chesapeake's field office in Cleburne, Texas.

Each invoice bears the purported signature of Kyle Willey, an employee of Chesapeake.  Michael Bechtel, the Assistant Controller at Chesapeake, testified that, on April 9, 2009, after only ten (10) of the invoices, Mr. Willey was terminated from Chesapeake.  Yet his purported signature continued to appear on the invoices issued after

that termination. All of the invoices were nonetheless approved for payment via Chesapeake's automatic approval system, which requires some employee authorizations in addition to Willey's signature, either by physical signature or electronic coding.

Chesapeake then paid each of the initial twenty-three (23) invoices. The total amount of those invoices was $855,175.00.[1] From October 15, 2009 to December 15, 2009, Chesapeake received eight (8) additional invoices for Fat-Boy separators[2] for amounts totaling $295,484.00. Chesapeake did not pay any of the latter eight invoices, and they remain outstanding.

In February of 2010, an Accounts Payable supervisor alerted Linda Havrilla, Chesapeake's Director of Internal Audits, that there were some problems with the Whitehead invoices. At Havrilla's direction, Mark Reinhart, a senior security officer in

---

[1] This amount represents the sum of the following invoices:

    a. Invoice No. 2455 dated January 16, 2009 in the amount of $37,454.50;
    b. Invoice No. 2456 dated January 23, 2009 in the amount of $37,454.50;
    c. Invoice No. 2459 dated February 6, 2009 in the amount of $37,454.50;
    d. Invoice No. 2463 dated February 10, 2009 in the amount of $31,176.00;
    e. Invoice No. 2464 dated February 13, 2009 in the amount of $37,454.50;
    f. Invoice No. 2468 dated February 24, 2009 in the amount of $37,454.50;
    g. Invoice No. 2470 dated February 27, 2009 in the amount of $37,454.50;
    h. Invoice No. 2472 dated March 11, 2009 in the amount of $37,454.50;
    i. Invoice No. 2473 dated March 20, 2009 in the amount of $37, 454.50;
    j. Invoice No. 2475 dated March 25, 2009 in the amount of $37,454.50;
    k. Invoice No. 2483 dated April 20, 2009 in the amount of $37,454.50;
    l. Invoice No. 2485 dated May 28, 2009 in the amount of $37,454.50;
    m. Invoice No. 2488 dated June 12, 2009 in the amount of $37,454.50;
    n. Invoice No. 2490 dated June 24, 2009 in the amount of $37,454.50;
    o. Invoice No. 2491 dated June 26, 2009 in the amount of $37,454.50;
    p. Invoice No. 2493 dated July 1, 2009 in the amount of $37,454.50;
    q. Invoice No. 2495 dated July 9, 2009 in the amount of $37,454.50;
    r. Invoice No. 2499 dated July 17, 2009 in the amount of $37,454.50;
    s. Invoice No. 2500 dated July 21, 2009 in the amount of $37,454.50;
    t. Invoice No. 2512 dated Sept. 15, 2009 in the amount of $37,454.50;
    u. Invoice No. 2513 dated Sept. 15, 2009 in the amount of $37,454.50;
    v. Invoice No. 2515 dated Sept. 23, 2009 in the amount of $37,454.50; and,
    w. Invoice No. 2516 dated Sept. 23, 2009 in the amount of $37,454.50.

[2] Invoice numbers 2520, 2521, 2525, 2526, 2528, 2529, 2532, and 2533.

Chesapeake's corporate security group, physically went to the sites to see if the Fat-Boy separators were there and found that they were not.

Reinhart contacted all of the shipping companies that Chesapeake would typically have used to ship the separators and found that none of them had shipped any of the items. Chesapeake subsequently had an inventory spreadsheet prepared of all properties managed by its Cleburne Field Office, which, as explained by Havrilla, confirms that no Fat-Boy separators were delivered. Moreover, Mr. Whitehead was unable to produce shipping documents showing his company had actually shipped the Fat-Boy separators to the sites. As explained further below, after filing his Answer, Whitehead has not participated in this proceeding, claiming his Fifth Amendment privilege.

### B. Factoring Agreement

In a Factoring and Security Agreement ("Factoring Agreement"), executed on April 15, 2008, Defendant Whitehead assigned some of its accounts, including its account with Chesapeake, to Defendant Cash Flow. The Factoring Agreement contractually assigns Whitehead's rights to collect its accounts receivable to Cash Flow.[3]

As a result, Cash Flow obtained the right to, and did in fact, receive Chesapeake's payments on the twenty-three (23) paid invoices. Cash Flow further maintains that it has the right to collect on the additional unpaid invoices that Whitehead had issued to Chesapeake.

### C. Procedural History

---

[3] "In the factoring process, a business sells its accounts receivables to a finance company [(the "factoring company")] at a discount. Then, as the business collects its receivables, it repays the factor. (In some cases, clients pay the factor directly.)" *Staff IT, Inc. v. U.S.*, 482 F.3d 792, 794 (5th Cir. 2007).

Chesapeake originally filed this action against Whitehead alleging fraud, breach of contract, and money had and received in an effort to recover the $855,175 it had paid, along with attorney's fees. It further sought a declaratory action that the additional unpaid invoices totaling $295,484.00 were unenforceable. Chesapeake also pled for exemplary damages against Whitehead. Thereafter, Chesapeake amended its complaint to join Defendant Cash Flow in its causes of action for breach of contract, money had and received, and for declaratory relief and attorney's fees.

Defendant Whitehead filed an Answer, denying the claims against him. After that pleading, he has failed or refused to defend the allegations against him, citing his Fifth Amendment privilege.[4] Cash Flow answered, denying the claims made against it, alleging affirmative defenses of contributory negligence, estoppel, fraud (as to Kyle Willey, as Chesapeake's employee), illegality, waiver, and ratification. Cash Flow went on to allege counterclaims against Chesapeake for accepting, ratifying, and approving the factoring agreement under theories of breach of contract, agency, apparent agency, ostensible agency, and agency by estoppel, seeking a declaratory judgment that the unpaid invoices are enforceable and seeking attorney's fees. In a cross-claim against Defendant Whitehead, Cash Flow alleges causes of action for fraud, illegality, breach of contract, contribution, indemnity, and seeking a declaratory judgment and attorney's fees.

In the motion before the Court, Chesapeake seeks a traditional summary judgment

---

[4] Chesapeake and Cash Flow have provided the Court with communications from Whitehead's attorney, including an email that states: "Mr. Whitehead has instructed me not to contest Cash Flow's motion for summary judgment or file any pleading in response. He has also instructed me that he will not contest any Chesapeake motion for summary judgment or file any pleading in response. Mr. Whitehead also continues to assert his 5th Amendment rights and is unwilling to participate in discovery or mediation."

against both Whitehead and Cash Flow on its claims for breach of contract and money had and received. It further seeks a "no evidence" summary judgment against Cash Flow on its breach of contract counterclaim. Cash Flow defends, claiming that there are a number of disputed issues of material fact precluding summary judgment. In particular, Cash Flow disputes that the summary judgment evidence is sufficient to establish that the Fat-Boy separators were not, in fact, delivered to Chesapeake.

## III.   Discussion

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. . . . The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Rivera*, 349 F.3d at 247.

The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

    **B.**    **The Separators Were Not Delivered**

The critical issue for determining whether judgment should issue as a matter of

law is whether there is a genuine dispute for the jury to decide as to whether the Fat-Boy separators were, in fact, delivered to Plaintiff Chesapeake consistent with the invoices. On that issue, Chesapeake offered the affidavit and deposition testimony of Linda Havrilla, a certified public accountant who is also the Director of Internal Audits for Plaintiff Chesapeake. Her testimony established that Chesapeake had engaged in a vendor audit regarding Whitehead, including an investigation and inventory.

Havrilla testified that the audit began with a review of the general ledger system to pull all accounting data relevant to the questioned invoices, along with copies of canceled checks that had been issued for payment of those invoices. The field investigation was conducted by Mark Reinhart, a senior security officer for Chesapeake. As Havrilla recounts, she was in constant communication with Reinhart as he went to the sites on the invoices to physically see whether the separators were there. They were not. He then contacted known shipping companies to determine if they had any records of having shipped Fat-Boy separators from Whitehead to Chesapeake. They had not. According to Havrilla's deposition, Glen Stetson, another Chesapeake employee, had also gone to look for the Fat-Boy separators and did not find any. Before they were done, Chesapeake's investigators had checked all of the well sites in the subject county. While Chesapeake sought shipping documents from Mr. Whitehead, he did not produce any to support the invoices in question.

Last, an inventory was conducted by Contek Solutions, LLC ("Contek"), an independent company. A copy of the inventory spreadsheet was attached as an exhibit to Havrilla's affidavit. Contek did not find any of the invoiced Fat-Boy separators in

Chesapeake's possession.  Cash Flow objects to the inventory spreadsheet as "vague, confusing, and unexplained."  As Havrilla did, in fact, explain the significance of the entries in the spreadsheet, that objection is overruled.  Cash Flow also objects to the inventory on the basis of Fed. R. Evid. 403 as having a prejudicial or misleading effect on the jury.  As this is a summary judgment proceeding not involving a jury, that objection is also overruled.

Cash Flow has not offered any affirmative evidence that Whitehead did deliver the Fat-Boy separators to Chesapeake.  Cash Flow's attempt to create a genuine disputed issue of material fact is limited to three suggestions.  First, Cash Flow suggests without benefit of cited authority that Chesapeake should be required to produce evidence from Whitehead, itself, that the separators had not been sent.  Such a burden of proof is contrary to our jurisprudence and would make a case such as this impossible to prosecute when an alleged wrongdoer asserts his Fifth Amendment privilege and refuses to provide evidence as has occurred here.

Second, Cash Flow claims that Chesapeake, in response to requests for admissions, admitted that it "did not verify one way or another receipt of the separators."  In support of this assertion, Cash Flow has attached Chesapeake's responses to requests for admissions without directing the Court to any particular request or answer.  The Court is not required to sift through voluminous exhibits to extract a kernel of information that might be favorable to a respondent.  *See generally*, *Brown v. Ohio State University*, 616 F.Supp.2d 740 (S.D. Ohio 2009), *aff'd*, 385 Fed. Appx. 486 (6th Cir. 2010).  The Court also notes that the responses are prefaced with objections on which Cash Flow has not

requested rulings. Therefore, the Court does not find a fact dispute is supported by any alleged admission.

Third, Cash Flow claims that it is possible that the Fat-Boy separators had been delivered to Chesapeake and that Chesapeake had transferred them elsewhere. Cash Flow complains of Chesapeake's lack of documentation to track movement of separators from one rig site location to another. Once again, Cash Flow does not direct this Court's attention to the specific information it relies upon in its summary judgment evidence. *Brown, supra.* Even if the evidence supports Cash Flow's proposition, it is not affirmative evidence that the separators were delivered. Rather, it raises mere speculation, which does not rise to the level of creating a genuine dispute of a material fact issue to prevent issuance of summary judgment. *Willis, supra; Brown, supra*.

As noted, Defendant Whitehead has asserted a Fifth Amendment privilege and has not responded to the Plaintiff's motion for summary judgment and has not presented any controverting evidence. After reviewing Chesapeake's summary judgment evidence and Cash Flow's evidence and objections to Chesapeake's evidence, the Court finds that there is no genuine issue of material fact regarding whether Defendant Whitehead delivered the invoiced Fat-Boy separators to Plaintiff Chesapeake. It did not.

### C. Claims and Remedies

#### a. Breach of Contract

This Court, sitting in diversity, applies the substantive law of the forum state. *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Texas law, the elements for a breach of contract cause of action are as follows: (1) a contract; (2) the plaintiff

performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *See Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied).

The Declaratory Judgment Act further provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

With respect to Defendant Whitehead, it is uncontroverted that the invoices represented contractual agreements for the sale and delivery of Fat-Boy separators from Whitehead to Chesapeake in exchange for the stated purchase price. Chesapeake has tendered payment for twenty-three (23) such separators, thus demonstrating performance of its obligations under the contracts. Plaintiff has also demonstrated that Defendant Whitehead failed to deliver any of the 23 separators represented by the paid invoices and that Whitehead has further failed to deliver the additional 8 separators for which invoices have been submitted, but remain unpaid. Thus Plaintiff Chesapeake has established that Whitehead breached the contracts.

Clearly, Chesapeake is entitled to recover its damages against Whitehead in the amount of $855,175.00—the amount paid for which nothing was received in return. No other damages were requested in the motion for summary judgment. Chesapeake is also entitled to a declaratory judgment that the additional sum of $295,484.00 represented by

the eight (8) unpaid invoices is not due and owing and the charges are not enforceable.

It does not necessarily follow that Chesapeake is also entitled to the same recovery under a breach of contract theory against Defendant Cash Flow. Plaintiff Chesapeake did not demonstrate a contractual relationship with Cash Flow. Cash Flow's contractual duties arise only through the Factoring Agreement with Whitehead. Chesapeake was not a party to that contract.

If Chesapeake were to establish a contractual theory against Cash Flow, it would have to be based upon a term in the Factoring Agreement by which Cash Flow agreed to assume the contractual duties owed by Whitehead to Chesapeake. However, Cash Flow's agreement was, unambiguously, a simple assignment of accounts. It did not expressly or impliedly require Cash Flow to perform Whitehead's contractual duties to any customer, including Chesapeake. Neither is there any argument in Chesapeake's motion that it did. Thus Chesapeake's separate cause of action for breach of contract against Cash Flow must fail for want of proof of a contractual duty owed by Cash Flow to Chesapeake.

Chesapeake is, however, entitled to declaratory relief against Cash Flow based on Whitehead's breach of contract. Because this Court has held that the subject invoices are not supported by the delivery of the subject products, the declaratory relief holding the unpaid invoices to be unenforceable applies equally against Cash Flow.

Likewise, because there is "no evidence" that the Fat-Boy separators were delivered, Cheasapeake is entitled to a "no evidence" summary judgment against Cash Flow on Cash Flow's counterclaims seeking to collect on the unpaid invoices. Cash Flow, whose collection rights are derivative of Whitehead's contract rights, cannot prove

Whitehead's performance.

### b.     Money Had and Received

Chesapeake's claims for money had and received sound in equity.  The Supreme Court of Texas has observed that a Plaintiff asserting this claim will have to establish that it paid money to the defendant, either by mistake or fraud, that, in equity or good conscience, should be returned to the plaintiff—a theory of recovery that requires individualized inquiry into the conduct and state of mind of both parties.  *See generally*, *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 207 (Tex. 2007).

The claim is not premised on wrongdoing, but seeks to determine to which party, in equity, justice, and law, the money belongs, avoiding unconscionable loss to the payor and unjust enrichment to the payee.  *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162–63 (Tex. 2007) (per curiam); *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982).  A defendant may present any facts or raise any defenses that would deny a claimant's right to recover under this theory. *Best Buy, supra* at 162–63.  Detrimental reliance is one of the factors that can be considered in balancing the equities in a claim for money had and received.  *Edwards v. Mid-Continent Office Distributors, L.P.* 252 S.W.3d 833 (Tex. App.–Dallas 2008, pet. denied).

Defendant Cash Flow's summary judgment evidence includes the deposition of Michael Bechtel, the Assistant Controller in Operations Accounting for Chesapeake. Bechtel testifies regarding Chesapeake's accounts payable approval process, admitting that mistakes were made in reliance on Kyle Willey's purported signature on the subject Whitehead invoices, both before and after Willey was terminated.  Additional approvals

were required by Chesapeake as controls to prevent the precise errors that occurred in this case—payment for equipment that was not received. Those controls failed. Bechtel admitted that there was a "breakdown" in Chesapeake's system that allowed the payments on the invoices to continue when they should not have.

Cash Flow also provided the deposition of Alice Thomas, its owner. She testified that Cash Flow relied on the Kyle Willey purported signature, and the payments that had been made, as proof that Chesapeake had received the Fat-Boy separators and that the invoices were properly due and payable. She also testified about her company's due diligence in keeping up with the account debtors such as Chesapeake to verify that the accounts Cash Flow was buying from Whitehead were legitimate.

The competing evidence regarding the comparative responsibility between the parties for the mistake in paying the invoices precludes this Court from issuing summary judgment on this theory.

## IV. Conclusion

For the reasons stated above, Plaintiff Chesapeake's motion for summary judgment is GRANTED IN PART and DENIED IN PART. D.E. 37.

ORDERED this 26th day of August, 2011.

_____
**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**